IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 19, 2003

## STATE OF TENNESSEE v. TRAVIS BRONSON, a/k/a TERRY CRUSENBERRY

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S46,807     Phyllis H. Miller, Judge**

**No. E2003-00385-CCA-R3-CD**
**October 9, 2003**

The defendant pled guilty to theft under $500 and was sentenced to eleven months, twenty-nine days in the county jail at zero percent work release eligibility, to be served consecutively to a two-year sentence in a separate case. On appeal, the defendant argues that the trial court erred in denying him probation. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

Julie A. Rice, Contract Appellate Defender (on appeal); Stephen M. Wallace, District Public Defender; and Leslie S. Hale, Assistant Public Defender (at trial), for the appellant, Travis Bronson, a/k/a Terry Crusenberry.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Lewis Combs, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On November 25, 2002, the defendant, Travis Bronson, a/k/a Terry Crusenberry, pled guilty in the Sullivan County Criminal Court in case number S46,634 to criminal attempt to commit robbery, a Class D felony, and possession of Lortab, which the trial court merged with the attempted robbery, and in case number S46,807 to theft under $500, a Class A misdemeanor. At the guilty plea hearing, the assistant district attorney general informed the court of the evidence the State would have offered at trial:

The State's case in S46,634 would have been had this case gone to trial, that on June the 1st, 2002 the defendant entered the CVS Pharmacy located on Virginia Avenue in Bristol, Tennessee . . . that he approached the pharmacist's desk, that he saw a bottle of Lortab back behind the counter . . . rushed past the desk and grabbed the pills and attempted to take them by force and started back towards the door of the CVS Pharmacy. The State's proof would be further that the pharmacist, Dave Gilmore, tackled the defendant and pinned him to the floor and held him there until the police could come and arrest him. . . .

The State's proof in S46,807 would be that the defendant entered the Lowe's store . . . in Kingsport . . . [and] selected and concealed various merchandise from the store valued at forty dollars and ninety-two cents ($40.92). It would be proof that he left the store without paying for the merchandise, bypassed the registers, and he was apprehended by Mr. Robbins outside and confessed to Mr. Robbins that he had taken the property from Lowe's that was taken without consent.

The record establishes that the defendant's theft of merchandise from the Lowe's store occurred on December 12, 2001. The record further establishes that he was out on bond for that offense at the time he committed the attempted robbery of the CVS Pharmacy. Pursuant to his plea agreement, the defendant was sentenced as a Range I, standard offender to two years for the attempted robbery conviction and to eleven months, twenty-nine days for the theft conviction, with the manner of service for the theft conviction to be determined by the trial court at a later sentencing hearing.

The defendant testified at the January 30, 2003, sentencing hearing that his name was Terry Crusenberry, but that he had used several aliases in the past, including Travis McCrosky and Travis Bronson. He acknowledged the prior convictions listed on his presentence report were accurate, although he testified he was unable to remember several of the traffic violations. He further acknowledged he had a charge for misdemeanor failure to appear and a probation violation warrant pending at the time the presentence report was prepared. The defendant admitted he had a drug problem and said he was willing to undergo treatment to overcome it. He said he had, in fact, been "thinking about going . . . straight to Magnolia Ridge," a substance abuse treatment center, upon his release from jail. He informed the trial court that he wished to be granted probation or some other sentence involving release into the community so that he could be with his mother, who had had two or three heart attacks and recently undergone open heart surgery, and could spend more time with his children whom he had not seen in almost a year. The defendant testified he had three children, ages seven, eight, and twelve, who presently lived with his wife. He said he provided support for his children when he was working and had spoken to a former employer, a handicapped man who owned a car lot, who told him he would rehire him as his assistant upon his release from jail.

On cross-examination, the defendant testified he could reside with his employer if he had nowhere else to live. He conceded his Virginia probation officer listed his address as "transient" on a probation report, but he could not understand why she did so, saying that he lived with his mother after her open heart surgery and provided his probation officer with her address. He acknowledged the probation officer had also written in her report that his case was difficult to monitor and that she did not consider him a good candidate for probation. The defendant explained he had been "on the drugs real bad" at that time. He testified, however, that he had not used any drugs in the nine months he had spent in jail, could now see what drugs had done to his life, and no longer desired to use them.

Upon questioning by the trial court, the defendant acknowledged he was not married to the woman he referred to as his wife. Asked about his presentence report, which stated his mother had said she would not allow him to live with her, the defendant testified his mother denied saying that and said that he was welcome to stay with her. However, he also testified he had already made arrangements for a job and a place to live with his former employer. The defendant testified his former employer knew him by the name "Crusenberry," which was his girlfriend's last name and one he had first used when he was pulled over by the police while "strung out on the pills."

The defendant admitted having once changed his address without informing his Virginia probation officer. He explained he had moved in with some friends, but had been forced to move when they failed to pay rent and subsequently abandoned the residence. He testified he had lived in one motel in the Bristol, Virginia, area for two months during that time, but had informed his probation officer of his address. He denied having told his probation officer he had stayed in various motels in the area and said he was sure that information, which was in her report, "was all just a mistake."

At the conclusion of the hearing, the trial court found the defendant was not a suitable candidate for probation or other alternative sentencing and accordingly sentenced him to serve his eleven-month-twenty-nine-day sentence in confinement. Thereafter, the defendant filed a timely appeal to this court, raising as his sole issue whether the trial court erred in ordering that he serve his full sentence in confinement, rather than granting him probation.

## ANALYSIS

The defendant contends the trial court erred in sentencing him because it failed to consider two appropriate mitigating factors: his crime neither caused nor threatened serious bodily injury, and he committed the theft under strong provocation. See Tenn. Code Ann. § 40-35-113(1), (2) (1997). He argues mitigating factor (1) should have been applied based on the evidence he was apprehended outside the Lowe's store "with ease and without any indication of violence on his part whatsoever," and mitigating factor (2) should have been applied based on the evidence that his strong addiction to pain medication caused him to commit the crime in order to fund his habit. The defendant additionally argues that his addiction to pain pills and the withdrawal symptoms he was experiencing at the time of his attempted robbery of the CVS Pharmacy should have been considered as a

mitigating factor by the trial court under Tennessee Code Annotated section 40-35-113(13), the "catchall" provision of the statute. He asserts an appropriate consideration and weighing of the enhancement and mitigating factors by the trial court should have resulted in a partial probationary sentence, rather than a sentence of full confinement. The State argues the trial court properly denied probation based on the defendant's extensive criminal history, lack of truthfulness, and history of probation violations. We agree with the State.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides in part that the trial court shall impose a specific sentence that is consistent with the purposes and principles of the 1989 Sentencing Reform Act. See Tenn. Code Ann. § 40-35-302(b) (1997). Although the Sentencing Reform Act typically treats misdemeanants and felons the same, misdemeanants are not given the presumption of a minimum sentence. See State v. Seaton, 914 S.W.2d 129, 133 (Tenn. Crim. App. 1995). A separate sentencing hearing is not required in misdemeanor sentencing, but the trial court must "allow the parties a reasonable opportunity to be heard on the question of the length of any sentence and the manner in which the sentence is to be served." Tenn. Code Ann. § 40-35-302(a) (1997). A misdemeanor sentence, unlike a felony sentence, has no sentence range. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

The trial court has great flexibility and discretion in fashioning a misdemeanor sentence. Unlike the felony sentencing statute, which requires the trial court to place its findings on the record, the misdemeanor sentencing statute "merely requires a trial judge to consider enhancement and mitigating factors when calculating the percentage of a misdemeanor sentence to be served in confinement." State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). When a defendant challenges a misdemeanor sentence, this court conducts a *de novo* review with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (1997).

Even if eligible, a defendant is not automatically entitled to probation as a matter of law. See Tenn. Code Ann. § 40-35-303(b) (1997). The burden is upon the defendant to show that he is a suitable candidate for probation. Id.; State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, the best interest of the defendant and the public, and the defendant's credibility. Goode, 956 S.W.2d at 527.

The record demonstrates that the trial court considered each of the statutory enhancement and mitigating factors in sentencing the defendant. The trial court applied enhancement factors (1) and (8) based on the defendant's extensive criminal record and his previous history of probation

violations. See Tenn. Code Ann. § 40-35-114(1), (8) (1997).[1] As for mitigating factors, the trial court noted factor (1), the defendant's criminal conduct neither caused nor threatened serious bodily injury, was "true for every thief" and, thus, gave it little, if any, weight. The court found the defendant's status as a high school graduate a positive factor but, again, apparently assigned it little or no weight. The court also considered a number of nonstatutory mitigating factors, including whether the defendant had expressed remorse for his crimes, whether he had an excellent work history, whether he had voluntarily confessed his guilt, and whether he had made any efforts at rehabilitating himself. However, based on the record, the trial court found that none of these mitigating factors applied.

In finding the defendant unsuitable for probation, the trial court noted, *inter alia*, his many violations of probation in Virginia, use of four different names, untruthfulness to the court, poor social history, and violations of the conditions of his release on bond. After reviewing the defendant's record, the trial court concluded:

> So, I find that you have a criminal history demonstrating a failure of past efforts at rehabilitation. I find that you're untruthful, that your potential for rehabilitation is almost zero and none. That probation officer has worked with you in Virginia way beyond what I would hope any of our people would. You know, I would have signed a warrant the first time out of this Court because we demand truthfulness, and your chances of making it on probation are, it just won't do, or any other form of alternative sentencing because even in the Brown Annex you wouldn't make it.

The record fully supports the trial court's sentencing determinations. The defendant's presentence report reflects a lengthy criminal history beginning at age 19 and culminating at age 36 with his attempted robbery of the CVS Pharmacy when he was out on bond for the instant offense. In addition, the defendant was on probation with the Commonwealth of Virginia at the time he committed the offense. According to the report of his supervising probation officer, Sally Johnson, on multiple occasions the defendant failed to inform her of his changes in address, provided false information regarding his residences, and failed to stay in contact with her. Johnson stated that when she ultimately tracked him down, the defendant "admitted he was living in various motels in the Lee Highway area of Washington County/Bristol, Virginia." She stated that the defendant's case had been an "extremely difficult" one to monitor, and she held the opinion that he was not a suitable candidate for probation supervision.

The record further reflects that the defendant has used multiple names in the past, including "Travis Ray Johnson," which the defendant's mother reported was the defendant's true name; "Terry Crusenberry," the name the defendant informed the trial court was his real name; "Travis Taylor

---

[1] Under the current statute, these would be enhancement factors (2) and (9). See Tenn. Code Ann. § 40-35-114 (Supp. 2002).

McCrosky"; and "Travis Raymond Bronson." Additionally, the defendant told the trial court that his mother would welcome him into her home and that he had never admitted to his Virginia probation officer that he had been living in various motels in the area, in spite of the information contained in his presentence report to the contrary. The defendant testified at the sentencing hearing that he realized what drugs had done to his life and had been "thinking" about entering a rehabilitation program upon his release from jail. However, his information about the program was unspecific and his plans vague. Moreover, his mother reported to the officer who prepared the presentence report that she believed the defendant would probably quickly turn to drugs upon his release from jail. She also reported that the defendant, to her knowledge, was not married to "Kristie Crusenberry" and that it was not clear to her whether Crusenberry's three children were, in fact, the defendant's children. In sum, the defendant's social history, record of prior convictions under multiple names, and testimony at the sentencing hearing evidence a complete lack of candor and truthfulness on his part.

A trial court may base a sentence of confinement upon any one of several considerations, including a finding that "[m]easures less restrictive than confinement have frequently or recently have been applied unsuccessfully to the defendant." Tenn. Code Ann. § 40-35-103(1)(C) (1997). Here, the trial court observed that measures less restrictive than confinement had been unsuccessfully applied to the defendant many times in the past, and thus sentenced the defendant to serve his eleven-month-twenty-nine-day sentence in confinement. Based on the record in this case, we find no error in the sentence imposed by the trial court.

## CONCLUSION

After reviewing the record, we conclude that the trial court did not err in sentencing the defendant to serve his eleven-month-twenty-nine-day sentence in confinement. Accordingly, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE